United States District Court
Southern District of Texas
**ENTERED**
March 15, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOSE A. MALDONADO, *et al.*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-1484 |
| | § | |
| FIRSTSERVICE RESIDENTIAL, INC., | § | |
| *et al.*, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is a dispute among neighbors and a neighborhood association. The issue is parking. Jose and Maria Maldonado want to park a Ford Transit van and trailer in their driveway. The defendants—FirstService Residential, Inc., Royal Brook Community Association, Inc., Friendswood Development Company, LLC, Natasha Brown, Jennifer McKenry, John H. Palamidy, Jr., Cynthia A. Hill, and Korie Herold—want to keep the van and trailer out of the subdivision. They allege that the Maldonados are violating deed restrictions by parking the van and trailer in the neighborhood and are threatening the Maldanados with fines and legal action. The Maldonados claim that the defendants are targeting them because they are Puerto Rican. The Maldonados sued, alleging discrimination based on race and national origin and seeking damages and injunctive relief. The court has previously addressed the request for an injunction, and the parties agreed on a temporary order.

Five of the defendants—FirstService, Royal Brook, Friendswood, Brown, and McKenry—moved to compel arbitration based on an arbitration clause in the subdivision's deed

restrictions.  The deed restrictions are clearly mentioned in the Maldonados' deed and chain of title.  The arbitration clause, however, applies only to claims for damages, not injunctive relief.

Based on the pleadings, the motions and responses, and the relevant law, this court grants the defendants' motion to compel arbitration of the Maldonados' damages claims.  The reasons are set out below.

## I.    Background

### A.    The Proceedings in Federal Court

In 2019, the Maldonados bought a house in the Royal Brook at Kingwood subdivision. (Docket Entry No. 28 at ¶ 15).  In April 2020, the Maldonados sued two sets of defendants: the developer defendants, including Royal Brook, FirstService, the subdivision's managing agent, Friendswood, Jennifer McKenry, a Homeowners Association Board Member, and Natasha Brown, a FirstService employee, and their neighbors, Palamidy, Hill, and Herold.  (Docket Entry No. 28 at ¶¶ 1–10).  The Maldonados allege that the defendants conspired to discriminate and harass them through the "unequal application" of deed restrictions related to parking.  (Docket Entry No. 28 at ¶ 59).  They allege that Royal Brook does not apply these same deed restrictions to non-Latino residents.  (*Id.*).  The Maldonados brought a multitude of federal and state claims, including claims for race and national origin discrimination under 42 U.S.C.  § 1981; discriminatory interference with property rights under 42 U.S.C. § 1982; conspiracy to discriminate under 42 U.S.C. § 1985; tortious interference; stalking; and intentional infliction of emotional distress.  (*Id.* at ¶¶ 112–154).  They also moved for a temporary restraining order and preliminary injunction to enjoin enforcement of the relevant deed restrictions.  (Docket Entry No. 11).

In June 2020, the court held a temporary restraining order hearing and denied the Maldonados' application for a temporary restraining order. (Docket Entry No. 22). Royal Brook counterclaimed for statutory damages and injunctive relief against the Maldonados for deed-restriction violations. (Docket Entry No. 41). The developer defendants and neighbor defendants have filed motions to dismiss, which the court has not yet addressed. (Docket Entry No. 33).

In September 2020, the court held a hearing during which the parties agreed on a temporary injunction that the court later approved. (Docket Entry Nos. 68, 101). Three days after the hearing, the developer defendants moved to compel arbitration. (Docket Entry No. 69).

### B.    The Arbitration Clause

The Royal Brook subdivision is governed by the Royal Brook Declaration of Covenants, Conditions and Restrictions. (Docket Entry No. 28 at ¶ 5). The subdivision developer filed the Declaration in the Harris County property records. (Docket Entry No. 69-17). Additional filings in the property records refer to the Declaration. (Docket Entry No. 69-18).

The Maldonados' deed states that it is "given and accepted subject to all and singular the restrictions, covenants, conditions, limitations, easements and mineral reservations, if any, applicable to and enforceable against the . . . property as reflected by the records of the county in which it is located." (Docket Entry No. 69-19 at 1). The Maldonados' deed of trust also contains a planned unit development rider that states that the "Borrower's obligations" include the obligations in the "Declaration." (Docket Entry No. 69-20 at 15).

The Declaration states that "[a]ll Claims must be settled by binding arbitration." (Docket Entry No. 69-2 at § 13.07). "Claim" is defined as follows:

(i) Claims relating to the rights and/or duties of Declarant or the Association under the Restrictions.

(ii) Claims relating to the acts or omissions of the Declarant or Board members of the Association and any claim asserted against the Declarant or any appointed member of the ARC.

(iii) Claims relating to the design or construction of any Improvements by the Declarant.

(*Id.* at § 13.01.1).

"Declarant" is defined as "Friendswood Development Company, LLC and its successors and assigns." (*Id.* at § 1.09). "Claimant" is defined as "any Party having a Claim against any other Party." (*Id.* at § 13.01.2). "Party" is defined as "[t]he Association, the Owners, Declarant, all persons subject to this Declaration, and any person not otherwise subject to this Declaration who agrees to submit to this Article." (*Id.* at § 13.01). "Owner" is defined as "the record owner, whether one or more persons or entities, of the fee simple title to the surface estate in any Lot or Commercial Unit which is a part of the Property." (*Id.* at § 1.16).

Parties may enforce the arbitration clause by bringing "an action in court to compel arbitration." (*Id.* at § 13.07). The arbitration clause permits parties to "seek, use, and employ ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, or protecting upon any property, real or personal, that is involved in a Claim." (*Id.* at § 13.08). The arbitration clause makes clear that the "institution and maintenance of an action for judicial relief or pursuit of provisional or ancillary remedies or exercise of self-help remedies shall not constitute a waiver of the right of any party to submit the Claim to arbitration." (*Id.*).

## II.    Legal Standards

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, permits a party to move to compel arbitration when an opposing party refuses to arbitrate issues covered by a valid arbitration

4

agreement. *Am. Bankers Ins. Co. Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)); 9 U.S.C. §§ 3, 4. To rule on a motion to compel, a court must first decide if the dispute is arbitrable. *See Papalote Creek II, LLC v. Lower Colo. River Auth.*, 918 F.3d 450, 454 (5th Cir. 2019). This requires deciding whether "(1) there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Gross v. GGNSC Southaven, LLC*, 817 F.3d 169, 176 (5th Cir. 2016) (quoting *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006)).

The party moving to compel arbitration has the burden of showing an arbitration agreement under the applicable state contract law. *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) ("Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate."); *Huckaba v. Ref-Chem, LP*, 892 F.3d 686, 688 (5th Cir. 2018) ("[T]he party moving to compel arbitration must show that the agreement meets all of the requisite contract elements."). The court follows the federal policy of resolving "ambiguities in favor of arbitration" in "determining the scope of a valid arbitration agreement." *Klein v. Nabors Drilling USA LP*, 710 F.3d 234, 237 (5th Cir. 2013); *see also Huckaba*, 892 F.3d at 688.

If there is an enforceable agreement to arbitrate the dispute, the court must then determine whether any federal statute or policy makes the claims nonarbitrable. *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017). If not, the FAA requires district courts to order arbitration. *See Pacheco v. PCM Const. Servs., LLC*, 602 F. App'x 945, 947 (5th Cir. 2015) ("A district court must compel arbitration if there is an agreement for arbitration and a party has failed to comply with that agreement.").

### III.    Analysis

#### A.    Valid Arbitration Agreement

Under Texas law, a party seeking to compel arbitration must show: (1) the existence of a valid agreement to arbitrate; and (2) that the claims asserted by the party attempting to compel arbitration are within the scope of the arbitration agreement.  *See Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 950 S.W.2d 375, 377 (Tex. App.—Tyler 1996, writ dism'd w.o.j.).

The Maldonados do not dispute that they have a binding arbitration agreement with Friendswood and Royal Brook.  (Docket Entry No. 93 at 13).  The Declaration, which contains an arbitration clause, is referred to in their deed and is recorded in their chain of title.  (Docket Entry No. 28 at ¶ 5; Docket Entry Nos. 69-17, 69-18, 69-19).  Instead, the Maldonados argue that they do not have a binding arbitration agreement with McKenry, because she is their neighbor, or with FirstService and Brown, neither of whom signed the Declaration.  (Docket Entry No. 93 at 19).

McKenry may enforce the Declaration's arbitration clause against the Maldonados.  The clause requires arbitration of claims "relating to the acts or omissions of the Declarant or Board members of the Association."  (Docket Entry No. 69-2 at § 13.01.1).  McKenry is a board member for the Homeowner's Association.  (Docket Entry No. 28 at ¶ 10).  The Maldonados' claims against McKenry relate to her actions as a board member.  The Maldonados' claims against McKenry fall within the Declaration's arbitration clause.

FirstService and Brown are also entitled to enforce the arbitration clause against the Maldonados.  In general, a signatory's agent may enforce an arbitration agreement against other signatories.  *See In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) ("[T]he

6

agents of a signatory may sometimes invoke an arbitration clause even if they themselves are nonsignatories and a claimant is not suing on the contract."); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) ("Federal courts have recognized six theories, arising out of common principles of contract and agency law, that may bind nonsignatories to arbitration agreements: . . . [including] agency."). When parties agree to a broad arbitration clause, "they generally intend to include disputes about their agents," because "the actions of a corporate agent on behalf of the corporation are [generally] deemed the corporation's acts." *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (quoting *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995)).

The arbitration provision in the Declaration broadly defines "Claim" to include any claim related to Royal Brook's "rights and/or duties" and "acts or omissions." (Docket Entry No. 69-2 at § 13.01.1). The Maldonados claim is that the developer defendants discriminatorily applied the parking restrictions in the Declaration, the contract that contains the arbitration clause. (Docket Entry No. 47-1 at ¶ 75); *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 528 (5th Cir. 2000) (compelling arbitration of a claim against a nonsignatory, in part because the plaintiff's claims depended on a contract with an arbitration clause); *Griffin v. ABN Amro Mortg. Grp. Inc.*, 378 F. App'x 437, 439 (5th Cir. 2010) (compelling a nonsignatory to arbitrate based on a mortgage document containing an arbitration clause). These claims relate to Royal Brook's duties, acts, and omissions under the Declaration.

The Maldonados' claims also implicate FirstService's and Brown's actions as agents for Royal Brook. Royal Brook hired FirstService to be the "Managing Agent" of the Royal Brook subdivision. (Docket Entry No. 69-11). FirstService is responsible for implementing the "decisions and the policy established by" Royal Brook, including "the enforcement of" the

parking restrictions in the Declaration.   (*Id.* at 5).   Brown is a FirstService employee and is responsible for managing the Royal Brook subdivision on behalf of FirstService.   (Docket Entry No. 69-5 at ¶¶ 1–5).   The Maldonados' first amended complaint recognizes that FirstService and Brown both work as agents for Royal Brook.   (Docket Entry No. 28 at ¶¶ 3–4, 64).   The Maldonados also agree that FirstService and Brown are responsible for enforcing the Declaration in the Royal Brook subdivision.   (*Id.* at ¶ 64).

The Maldonados' claims against FirstService and Brown are based on their role as Royal Brook's agents seeking to enforce the restrictions in the Declaration.   These claims depend on the Declaration and are subject to the arbitration clause.   *See In re Wells Fargo Bank, N.A.*, 300 S.W.3d 818, 825 (Tex. App.—San Antonio 2009) ("Because the parties in this court do not dispute that the nonsignatories were acting as agents of [the defendant] and each of their allegedly wrongful acts relate to their behavior as agents of [the defendant], we conclude relators were entitled to enforce the arbitration agreement."); *see also In re Media Arts Group, Inc.*, 116 S.W.3d 900, 905 n.4, 908 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (compelling arbitration of suit brought by one signatory against employees and affiliates of the other); *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 137–38 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (compelling arbitration of suit by one signatory against employees and subcontractors of the other); *In re EGL Eagle Global Logistics, LP*, 89 S.W.3d 761, 765–66 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (compelling arbitration of suit by one signatory against subsequent employer of signatory employee, and its employees).

B.      **Waiver**

The Maldonados argue that the defendants waived their right to arbitrate by moving to dismiss, filing counterclaims, and seeking a temporary restraining order and preliminary injunction.  The court disagrees.

A party waives its right to arbitration by substantially invoking the judicial process, to the detriment or prejudice of the other party.  *Pacheco v. PCM Const. Servs., LLC*, 602 F. App'x 945, 948 (5th Cir. 2015).  To substantially invoke the judicial process, a party "must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration."  *In re Mirant*, 613 F.3d 584, 589 (5th Cir. 2010) (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999)).  To show prejudice requires showing "inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue."  *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004) (citation and quotation marks omitted).  "The question of what constitutes a waiver of the right of arbitration depends on the facts of each case."  *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985).  There is "a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden."  *PAICO Receivables, LLC*, 383 F.3d at 344.

The defendants did not substantially invoke the legal process.  FirstService, Royal Brook, Brown, and McKenry filed a joint motion to dismiss and a second joint motion to dismiss after the Maldonado's filed their first amended complaint.  (Docket Entry Nos. 18, 33).  Royal Brook filed a counterclaim seeking damages and injunctive relief and participated in the preliminary-injunction hearing.  (Docket Entry No. 24).  Friendswood answered the complaint and asserted

9

its rights to arbitration. (Docket Entry No. 34). These acts, considered alone or together, do not amount to substantial invocation of the judicial process.

Filing a counterclaim is not a substantial invocation of the judicial process that triggers waiver. *See Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661–62 (5th Cir. 1995) (no waiver when the defendant removed and filed motions to dismiss and to stay proceedings, answered the complaint, asserted counterclaims, and exchanged discovery, both before and after moving to compel arbitration). Nor does seeking injunctive relief qualify as substantial invocation, *see DRW Tex. LLC v. McGrew*, No. 19-CV-00830, 2019 WL 7761812, at *5 (W.D. Tex. Oct. 31, 2019) (no substantial invocation even though the party opposing arbitration filed a motion for preliminary injunctive relief); *Custom Teleconnect, Inc. v. Billing Concepts, Inc.*, No. 11-CV-204, 2011 WL 13324085, at *12 (W.D. Tex. July 20, 2011) (no substantial invocation even though the party opposing arbitration filed a motion for injunctive relief), especially when, as here, the arbitration clause allows the parties to seek injunctive relief in court while simultaneously pursuing damages claims in arbitration. (Docket Entry No. 69-2 at § 13.08); *see Amegy Bank Nat. Ass'n v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441, 450 (S.D. Tex. 2012) ("Given this clear language [allowing the partis to pursue injunctive claims in court], any claim by [the plaintiff] for permanent injunctive relief . . . would not affect [the defendants'] rights to compel arbitration of arbitrable claims.").

Filing a motion to dismiss does not always qualify as substantial invocation. *See In re Mirant*, 613 F.3d at 589 ("In this Circuit, a bright-line rule is inappropriate for deciding whether a party has waived its right to arbitration."). Courts distinguish between perfunctory motions to dismiss that raise procedural concerns and motions to dismiss that seek a full decision on the merits. *See Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, No. 11-CV-2745, 2012

10

WL 5373462, at *6 (S.D. Tex. Oct. 30, 2012).  Courts also recognize a difference between parties who move to compel arbitration before a merits ruling and those who move after.  *See Forby v. One Techs., L.P.*, 909 F.3d 780, 784 (5th Cir. 2018) (distinguishing cases in which "the party seeking arbitration did not wait for the court's merit ruling . . . before moving to compel arbitration.").  Parties who move to compel arbitration before receiving a merits ruling do not "get a sense of the court's view of the case."  *Id.*  An unruled-on motion to dismiss typically does not qualify as substantial invocation.  *See Pacheco v. PCM Const. Servs., LLC*, 602 F. App'x 945, 948 (5th Cir. 2015) (motions to dismiss dealt with narrow ancillary issues and had not been ruled on when the motion to compel arbitration had been filed.); *see also Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005) (motion for summary judgment filed concurrently with motion to compel arbitration).

While Royal Brook, Brown, and McKenry filed a motion to dismiss and sought a ruling on the merits, they moved to compel arbitration shortly after moving to dismiss and before receiving a merits ruling.  (Docket Entry Nos. 33, 69).  The motion to dismiss targeted the claims for damages and injunctive remedies, which the Maldonados are permitted to pursue in federal court.  *See In re Mirant*, 613 F.3d at 591–92 ("[In a] case involv[ing] several claims that were non-arbitrable . . . , a motion to dismiss may not be inconsistent with a right to arbitrate." (citation and quotation marks omitted)); *see also Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463 (2d Cir. 1985) ("Plainly, the portions of the motion [to dismiss] addressed to nonarbitrable claims do not constitute a waiver. And where, as here, a plaintiff files an intricate complaint, setting forth numerous claims outside the scope of, though partially related to, the arbitrable claims, he should not be altogether surprised that a defendant takes the protective step of filing a motion to dismiss." (citation omitted)).  The motion to dismiss did not

substantially invoke the judicial process.  This conclusion is bolstered by cases finding waiver, which typically involve parties that have engaged in far more extensive litigation conduct.[1]

The Maldonados also failed to establish prejudice.  Courts look to three facts to determine whether a plaintiff was prejudiced: "(1) whether discovery occurred relating to arbitrable claims; (2) the time and expense incurred in defending against a motion for summary judgment; and (3) a party's failure to timely assert its right to arbitrate." *Petroleum Pipe*, 575 F.3d at 480.

The parties have not yet engaged in extensive discovery.  *Pacheco*, 602 F. App'x at 949 ("Further, while [the plaintiffs] had sent out discovery, [the defendant] had not yet responded or propounded its own discovery requests prior to moving to compel arbitration, a factor we have considered relevant in prior cases."); *Tenneco Resins*, 770 F.2d at 421 ("However, when only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon prejudice to the party opposing the motion to stay litigation.").  The only discovery that has occurred was relevant to the preliminary-injunction hearing.  *See Superior Oil Co. v. Transco Energy Co.*, 616 F. Supp. 98, 104 (W.D. La. 1985) ("Discovery was necessary in order to . . . defend against [the

---

[1] *See Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 481 (5th Cir. 2009) (the defendant removed the case to federal court; filed counterclaims; participated in discovery and numerous discovery meetings; and sought a ruling from the district court on the interpretation of the contract at issue); *PAICO Receivables, LLC*, 383 F.3d at 345 (the defendant answered; filed counterclaims; conducted full-fledged discovery, including four depositions; amended its complaint; filed the required pretrial materials; and filed numerous other motions, including two motions to compel discovery, a motion for summary judgment, and a motion in limine attempting to limit the evidence that the plaintiff could produce at trial); *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir. 1986) (across seventeen months, the defendant initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pretrial deadlines, without demanding arbitration).

plaintiff's] request for a preliminary injunction."). As noted above, the arbitration clause permits the parties to pursue injunctive relief in court without waiving their rights to arbitration.

The Maldonados have spent time and incurred some expenses defending against the developer defendants' motion to dismiss. But their briefs and discovery are likely to be relevant in the arbitration proceedings. In addition, the Maldonados had to respond to the neighbor defendants' motions to dismiss, which raised similar issues. *See In re Trevino*, No. 10-CV-70594, 2018 WL 5994753, at *6 (Bankr. S.D. Tex. Nov. 14, 2018) ("The expenses incurred by Plaintiffs [responding to a motion to dismiss] do not rise to a level sufficient enough to constitute a finding of prejudice."); *Rugg v. FMR Co.*, No. 09-CV-1952, 2010 WL 3733901, at *5 (W.D. La. Sept. 20, 2010) ("[P]laintiffs likely would have incurred these costs [responding to a motion to dismiss] in any event to support their claims in arbitration."); *Price*, 791 F.2d at 1162 (distinguishing the expense of responding to a summary judgment motion and "a motion to dismiss before answering").

The litigation proceeded for only five months before the developer defendants moved to compel arbitration. *Compare Williams v. Fid. Warranty Servs., Inc.*, No. 19-CV-1537, 2020 WL 2086655, at *3 (S.D. Tex. Apr. 30, 2020) ("Defendant filed its Motion to Compel Arbitration less than six months after removing the case."), *and Tenneco Resins v. Davy Int'l, AG*, 770 F.2d 416, 420–21 (5th Cir. 1989) (no prejudice when the defendant sought arbitration less than five months after filing its answer), *with Price*, 791 F.2d at 1159 (finding prejudice, in part, because the defendant waited 17 months before moving to compel arbitration).

The developer defendants did not waive their right to arbitrate.[2]

---

[2] The Maldonados also argue that the arbitration clause is unconscionable because they were the weaker party in the bargaining process and because enforcing the right would cause them to lose their right to a

## IV.    Conclusion

While the Maldonados have a valid arbitration agreement with the developer defendants, that agreement covers only their claims for damages.  The agreement does not require arbitration of their claims for injunctive relief.  The motion to compel arbitration, (Docket Entry No. 69), is granted as to the Maldonados' damages claims against the developer defendants.  The court retains jurisdiction over the Maldonados' claims for injunctive relief.[3]

SIGNED on March 15, 2021, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

---

jury trial.  Having a weaker bargaining position does not make an arbitration clause unconscionable or unenforceable.  *See Hafer v. Vanderbilt Mortg. & Finance, Inc.*, 793 F. Supp. 2d 987, 1002 (S.D. Tex. 2011) ("[T]he Fifth Circuit has repeatedly rejected the argument that the imbalance of power between the parties alone makes an adhesion contract unconscionable.").  And all arbitration agreements result in a party bargaining away its right to a jury trial.  *See Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 922 (N.D. Tex. 2000) ("Plaintiffs agreed to resolve their disputes with Defendant through arbitration. Accordingly, they validly waived their rights to a judicial forum, including the corollary right to a trial by jury.").

[3] The neighbor defendants, John H. Palamidy, Jr., Cynthia A. Hill, and Korey Herold, did not move to compel arbitration.  The Maldonados' claims against the neighbor defendants remain in federal court.

14