United States District Court
Southern District of Texas

**ENTERED**

June 18, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOSE A. MALDONADO, *et al.*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-1484 |
| | § | |
| FIRSTSERVICE RESIDENTIAL, INC., | § | |
| *et al.*, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This case arises from a neighborhood dispute over parking. Jose and Maria Maldonado live in the Royal Brook at Kingwood subdivision. Mr. Maldonado drives a Ford Transit van and sometimes tows a trailer. He parks the van and trailer in his driveway and on the street in front of his home. The Maldonados allege that, soon after moving to the subdivision, they had several run-ins with their neighbors, John Palamidy, Cynthia Hill, and Korie Herold. The Maldonados allege that these "neighbors" conspired against them because they are Puerto Rican.

The Maldonados allege that these neighbors pressured FirstService Residential, Royal Brook Community Association, Inc., Natasha Brown, and Jennifer McKenry—the defendants responsible for developing and managing the subdivision, referred to as the "developer-defendants"—to require the Maldonados to remove their van and trailer. The developer defendants allegedly began issuing them parking citations that the van and trailer violated subdivision parking rules. The developer defendants allegedly claimed that the Maldonados were violating deed restrictions by parking the van and trailer in the neighborhood and violated deed restrictions. The developer defendants threatened the Maldonados with fines and legal action if they continued. The

Maldonados allege that white residents are allowed to park similar vans and trailers in the neighborhood with impunity.

After receiving several citations, the Maldonados filed this lawsuit, asserting race and national-origin discrimination claims under 42 U.S.C. §§ 1981, 1982, and 1985(3), as well as tortious interference and intentional infliction of emotional distress. The Maldonados also asserted state-law stalking claims against Palamidy and Hill. The Maldonados claim that the parking provisions in the deed restrictions are not applied to white residents. The defendants moved to dismiss. Royal Brook also counterclaimed for breach of contract and breach of the neighborhood restrictive covenants. The Maldonados moved to dismiss the counterclaim.

The developer-defendants, FirstService, Royal Brook, Friendswood Development Co., Brown, and McKenry, previously moved to compel arbitration.[1]  (Docket Entry No. 69). This court granted the motion to compel, holding that the Maldonados' damages claims against these parties must proceed in arbitration. The arbitration agreement at issue allows the Maldonados to pursue their injunctive-relief claims in federal court. Palamidy and Hill did not move to compel arbitration.

Based on the pleadings, motions, and applicable law, the parties' various motions to dismiss are granted in part and denied in part. The rulings are summarized, and the reasons for them are set out in more detail.

---

[1] Friendswood did not move to dismiss.  (Docket Entry No. 34).

- The motion to dismiss filed by FirstService, Royal Brook, Brown, and McKenry's motion to dismiss, (Docket Entry No. 33), is denied as to the claims under §§ 1981, 1982, and 1985(3) claims, and is granted as to the intentional infliction of emotional distress claim.

- Palamidy's motion to dismiss, (Docket Entry No. 36), is denied as to the §§ 1981, 1982, and 1985(3) claims, the tortious interference claim, and the stalking claim.  The motion to dismiss is granted as to the intentional infliction of emotional distress claim.

- Hill's motion to dismiss, (Docket Entry No. 35), is granted.

- Herold's motion to dismiss, (Docket Entry No. 31), is granted.

- The Maldonados' motion to dismiss the counterclaim is granted as to alleged violations of § 10.02.  The motion is partially granted as to alleged violations of § 10.20: Royal Brook did not sufficiently plead a claim based on the Maldonados parking their van in their driveway, but Royal Brook did sufficiently plead a violation of Section 10.20 based on the Maldonados parking their trailer in the subdivision and parking their van on the street overnight.

The reasons for these rulings are detailed below.

## I.    Background

In 2019, the Maldonados bought and moved into a home in the Royal Brook at Kingwood subdivision.  (Docket Entry No. 28 at ¶ 15).  Royal Brook Community Association, Inc. is the homeowners' association for the subdivision.  (*Id.* at ¶ 5).  FirstService Residential, Inc. is a property-management company that runs the day-to-day operations in the subdivision.  (*Id.* at ¶ 64).  Jennifer McKenry is a member of the Royal Brook board; Natasha Brown is the FirstService employee in charge of managing the subdivision.  (*Id.* at ¶¶ 4, 10).

3

The Maldonados allege that shortly after moving in, they had several confrontations with their neighbors, John Palamidy, Cynthia Hill, and Korie Herold.  (*Id.* at ¶¶ 26–28, 36–39, 50–51, 53).  The Maldonados allege that Palamidy repeatedly questioned them about their race, ethnicity, and immigration status, (*id.* at ¶¶ 21–22), made racially charged comments, (*id.* at ¶¶ 25, 26, 28, 36–37); and blocked access to their mailbox and swerved towards them with his car, (*id.* at ¶¶ 39, 53).  The Maldonados also allege that they have overheard Hill and Herold discussing how to deal with "these people."  (*Id.* at ¶¶ 35, 43).  The Maldonados allege that the defendants have discriminated against them because they are Puerto Rican.  (*Id.* at ¶¶ 35, 48, 96).

The Maldonados own a Ford Transit van and a covered trailer that they park on the street and in their driveway.  (*Id.* at ¶¶ 79, 87, 90, 111).  The Maldonados allege that neighbors Palamidy, Hill, and Herold have conspired to use deed restrictions to harm the Maldonados and get them kicked out of the subdivision.  (*Id.* at ¶¶ 43–48).  The Maldonados allege that their neighbors repeatedly complained to Royal Brook that parking the van and trailer in the subdivision violated deed restrictions in the community plan.  (*Id.* at ¶¶ 52–54).  The Maldonados allege that these complaints led Royal Brook, FirstService, Brown, and McKenry to issue several citations to the Maldonados and insist that they remove the van and trailer from the subdivision.  (*Id.* at ¶¶ 63, 80, 81).  The Maldonados allege that the citations threaten fines and legal action.  (*Id.* at ¶ 80).

The Maldonados allege that the parking of the van and trailer complies with the deed restrictions, (*id.* at ¶¶ 82, 110–112), and that white residents park similar vans as they do on the driveway and street in front of their home, (*id.* at ¶ 83).  The Maldonados allege that the defendants do not enforce street-parking restrictions against white residents and that the defendants conspired

to discriminate against them and harass them through the "unequal application" of the parking deed restrictions. (*Id.* at ¶¶ 59, 85–86).

The Maldonados brought a multitude of federal and state claims against the defendants, including claims for race and national origin discrimination under 42 U.S.C. § 1981; interference with property rights under 42 U.S.C. § 1982; conspiracy to discriminate under 42 U.S.C. § 1985; tortious interference; and intentional infliction of emotional distress. (*Id.* at ¶¶ 112–154). Herold, FirstService, Brown, Royal Brook, McKenry, Hill, and Palamidy moved to dismiss. (Docket Entry Nos. 31, 33, 35, 36).

Royal Brook counterclaimed, seeking injunctive relief for breach of contract, breach of restrictive covenants, and statutory violations for the Maldonados' refusal to remove their van from the street, as well as monetary damages and attorneys' fees. (Docket Entry No. 41). Royal Brook alleges that the Maldonados parked a commercial van and trailer in front of their home and failed to remove the van and trailer after being notified multiple times that they violated the neighborhood covenants. (*Id.* at ¶¶ 18, 41). The Maldonados moved to dismiss. (Docket Entry No. 45). The court has held five hearings on this issue; this is the sixth.

## II.    Legal Standards

### A.    Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does

not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial

notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

### B.      Sections 1981, 1982, and 1985(3)

Section 1981 protects the rights of citizens to make and enforce contracts.  This protection extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(a).  Section 1982 protects the rights of non-white citizens to "hold and acquire property on an equal basis with white persons."  *City of Memphis v. Greene*, 451 U.S. 100, 122 (1981); 42 U.S.C. § 1982.  Both sections apply to "private and public" acts.  *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437 (1968).  Section 1985(3) prohibits "conspiracies to deprive a person of equal protection of the laws or of equal privileges and immunities under the laws on the basis of race."  *Jackson v. Biedenharn*, 429 F. App'x 369, 372 (5th Cir. 2011); 42 U.S.C. § 1985.

Sections 1981 and 1982 are generally construed "in tandem."  *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).  Both sections require the plaintiff to show: "(1) that she is a member of a racial minority; (2) that [the defendant] had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute."  *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001).  Allegations of facts sufficient to plead a violation of § 1981 or § 1982 are generally sufficient to support a claim under section 1985(3).  *Cho v. Itco, Inc.*, 782 F. Supp. 1186, 1187 (E.D. Tex. 1992).

III.     **Analysis**

A.     **The Section 1981, 1982, and 1985(3) Claims against FirstService Brown, Royal Brook, McKenry, Hill, Palamidy, and Herold**

1.  **Members of a Racial Minority**

The Maldonados are Puerto Rican.  They are members of a racial minority.  *See Bullard v. Omi Ga. Inc.*, 640 F.2d 632, 634 (5th Cir. Unit B. Mar. 1981) ("[W]hile discrimination purely on the basis of national origin does not create a cause of action under section 1981, this court has held that a complaint by Mexican-Americans alleging racial and ethnic discrimination clearly states a cause of action under the statute." (citation and quotation marks omitted)).

2.  **Activities Enumerated in the Statute**

The Maldonados allege discrimination in activities covered by § 1981 and § 1982.  Under § 1981, the Maldonados allege that Royal Brook, First Service, Brown, McKenry, Palamidy, Hill, and Herold conspired to discriminatorily enforce deed restrictions solely against the Maldonados. (Docket Entry No. 28 at ¶¶ 83, 107).  The Maldonados allege that the deed restrictions allow them to park their van and trailer in the subdivision, and that the developer defendants and neighbor defendants do not enforce street-parking restrictions against white residents.  (*Id.* at ¶¶ 9, 82).

The Maldonados sufficiently alleged that the defendants conspired to deprive them of equal rights and benefits under the community plan, in violation of § 1981.  *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 290 (5th Cir. 2004) (defendants' racial animus and adverse actions relating to plaintiffs use of property is sufficient to state a claim under § 1981); *Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 380 (2d Cir. 2019) (an African-American tenant adequately alleged a § 1981 claim against his landlord when the landlord was aware that the tenant's neighbor harassed him because of his race, and the landlord intentionally refused to address the harassment);

8

*Thomas v. Grundfos, CBS*, No. 4:18-CV-0557, 2019 WL 7838172, at *1 (S.D. Tex. Sept. 20, 2019) ("Other circuits also require the plaintiff to show that the individual had personal involvement in the alleged discriminatory or retaliatory acts in order to establish a § 1981 liability of an individual.").

Under § 1982, the Maldonados allege discriminatory interference with the use of their property. (Docket Entry No. 28 at ¶¶ 151–154). They allege that they are entitled to park their van and trailer within the subdivision, but that the defendants have issued them warnings and tickets and threatened legal action that white residents do not receive. (*Id.* at ¶ 72). The Maldonados plausibly alleged interference with the use of their property. *See City of Memphis v. Greene*, 451 U.S. 100, 120 (1981) (section 1982 is construed "to protect not merely the enforceability of property interests acquired by [minority] citizens but also their right to . . . use property on an equal basis with white citizens"); *Evans v. Tubbe*, 657 F.2d 661, 662–63 (5th Cir. 1981) (declining to dismiss a § 1982 claim alleging a racially-motivated refusal to allow plaintiff to access her property).

### 3. Intent to Discriminate on the Basis of Race

To allege intentional discrimination, the plaintiff must allege facts that could show the defendant's interference with the plaintiff's rights was racially motivated. A plaintiff can allege discriminatory intent through direct or circumstantial evidence. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). Alleging facts plausibly showing that "similarly situated non-minorities received better treatment "could create the necessary inference and set the predicate for establishing" a discrimination claim. *Id.* (quoting *Crosby v. Kilgore*, 9 F.3d 104,

9

1993 WL 481800, at *1 (5th Cir. 1993)).  By contrast, "naked allegations" of discriminatory intent are not enough.  *Body by Cook*, 869 F.3d at 386.

### a.　　FirstService Residential, Inc. and Natasha Brown

A plaintiff may sufficiently allege discriminatory intent with plausible factual allegations that the defendant departs from standard practice only for members of a racial minority.  *Fielder v. Sterling Park Homeowners Ass'n*, 914 F. Supp. 2d 1222, 1227–28 (W.D. Wash. 2012) (declining to dismiss §§ 1981 and 1982 claims against a homeowners' association based on allegations of disparate enforcement of deed restrictions due to the plaintiff's race).  Claims against principals for the acts of their agents require the principal to have "actual or constructive knowledge" of its agents' wrongdoing.  *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 749 (5th Cir. 2005).  Courts also hold employers liable for the discriminatory actions of their employees.  *See Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 763 (5th Cir. 1986) (explaining that the "imposition of vicarious liability on a private employer under section 1981" is permissible); *Bains v. Arco,* 405 F.3d 764, 773–74 (9th Cir. 2005) (holding the defendant company vicariously liable under § 1981 for the intentional discrimination of its agent).

The Maldonados allege that FirstService "manages the day-to-day [operations] of the HOA [and] the enforcement of HOA rules and bylaws."  (Docket Entry No. 28 at ¶ 64).  Brown works for FirstService as the Royal Brook "Community Administrator" or "Community Manager."  (*Id.* at ¶ 4).  She "manages and enforces the Homeowners Association of Royal Brook at Kingwood."  (*Id.*).

The Maldonados allege that FirstService and Brown sent them "baseless notices of violations of HOA rules and bylaws" while doing "little, if anything, to enforce rules and bylaws

10

against other white residents of Royal Brook." (*Id.* at ¶ 72). The Maldonados allege that FirstService and Brown face pressure from white neighbors to enforce the deed restrictions against the Maldonados because they are Puerto Rican. (*Id.* at ¶¶ 72–75). The Maldonados allege that they informed Brown, an agent of FirstService, at least twice that their neighbors were harassing and discriminating against them. (*Id.* at ¶¶ 63, 70, 71). Brown allegedly did not investigate. (*Id.*).

The Maldonados allege that FirstService conspired with Hill, Palamidy, Royal Brook, and McKenry to send violation notices to the Maldonados, even though FirstService did not send notices to white residents who parked similar vehicles in the subdivision that violated its rules. (*Id.* at ¶ 73–74). The Maldonados allege that they are aware of at least nine other instances when Brown and FirstService allowed white residents to park similar vans and trailers in the subdivision. (*Id.* at ¶ 83). They allege that a 2018 email shows that FirstService previously allowed white neighborhood residents "to either openly violate (or self-interpret) the same bylaws and rules" that are "strictly enforced" against the Maldonados. (*Id.* at ¶ 77). The Maldonados allege that FirstService "apologiz[ed] for any inconvenience" when white neighbors violated the subdivision rules and that FirstService has previously allowed, and continues to allow, "a large service truck, with company logos and decal," to park in the subdivision. (*Id.*).

The Maldonados sufficiently alleged that FirstService and Brown acted with discriminatory intent to preclude dismissal on the pleadings.

### b. Royal Brook Community Association, Inc. and Jennifer McKenry

At the motion to dismiss stage, allegations of "overt acts coupled with racial remarks are sufficient to state a claim" under § 1981. *Evans v. McKay,* 869 F.2d 1341, 1345 (9th Cir. 1989). Section 1981 prohibits private racial discrimination. *See McDonald v. Santa Fe Trail*

11

*Transp. Co.,* 427 U.S. 273, 296 (1976) ("Section 1981 prohibits racial discrimination in private employment against white persons as well as nonwhites, and this conclusion is supported both by the statute's language . . . and by its legislative history.").

The Maldonados allege that Royal Brook does not enforce parking restrictions in the subdivision against white residents but does enforce them against the Maldonados because they are Puerto Rican. The Maldonados allege that they can identify nine instances when white lot owners parked similar vans and trailers inside the subdivision with impunity. (Docket Entry No. 28. at ¶ 72, 76, 83). The Maldonados allege that McKenry and Royal Brook issued then parking citations but have admitted elsewhere that they do not have the authority to enforce how vehicles are parked on public streets in the subdivision. (*Id.* at ¶ 85). The allegations of a pattern of inconsistent enforcement sufficiently alleges intentional discrimination. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 ("Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role.").

The Maldonados also allege that they are aware of a voice recording, taken during a Royal Brook board meeting, in which white residents refer to the Maldonados as "asshole Puerto Ricans" and pledge that they "will be put in their place." (*Id.* at ¶ 96). The Maldonados allege that McKenry, a Royal Brook board member "with influence in the [Royal Brook] board," (*id.* at ¶ 10), "steer[ed] the HOA board members against the Plaintiffs, and adopt[ed] the hostile and discriminatory positions that have been adopted by other codefendants." (*Id.*). The Maldonados sufficiently allege that Royal Brook and McKenry acted with discriminatory intent.

### c.      John H. Palamidy, Jr.

Palamidy and Hill are married to each other.  They live across the street from the Maldonados.  The Maldonados allege that Palamidy conspired with Royal Brook to harm them because they are Puerto Rican.  (*Id.* at ¶ 138).  The Maldonados allege that Palamidy raised the Maldonados' race and national origin several times.  They allege that Palamidy was "incisive in his questions" about the Maldonados' national origin; he asked whether they "needed" a "different passport"; and he asked whether they had to "go through immigration" to enter the United States.  (*Id.* at ¶ 22).  The Maldonados also alleged that Palamidy complained that the Maldonados' children had names that were "too complicated" to pronounce, (*id.* at ¶ 23), and questioned why "Latinos" had to use names that were "too complicated," (*id.* at ¶ 24).  The Maldonados allege that Palamidy told Jose Maldonando that his father, a "dark-skinned elderly man," looked like "the yard guy."  (*Id.* at ¶ 28).  The Maldonados allege that Palamidy sent them messages referring to their vehicle as a "taco truck."  (*Id.* at ¶ 36).  The Maldonados allege that Palamidy "attack[ed] Plaintiff Maria Maldonado as a prostitute by referring to her as a cow."  (*Id.*).  These allegations are specific and are sufficient to allege that Palamidy acted with discriminatory intent.  *See McKay*, 869 F.2d at 1344–45 (holding that community leaders' statements directing the community "not to do business with the [plaintiffs]" and "whites have no rights on the reservation" were sufficient allegations of racial animus).

### d.      Cynthia A. Hill and Korie Herold

The Maldonados allege that they overheard Hill telling Herold that they "need to do something about these people."  (Docket Entry No. 28 at ¶ 43).  The Maldonados allege that Hill "aggressively disparaged and criticized the Plaintiffs on social media," with the intent to pressure

13

Royal Brook to act.  (*Id.* at ¶ 35).  The Maldonados allege that Hill made these posts "to bash Plaintiffs and let them know that they are not welcome at Royal Brook because Plaintiffs are different, namely they are of non-white Latin ethnicity and race."

The Maldonados allege that Herold "is in cahoots" with other defendants and is pressuring Royal Brook to discriminate.  (*Id.* at ¶¶ 44−46).  The Maldonados allege that Herold has a history of using social media to "influence others and to attack anyone she personally dislikes or disagrees with."  (*Id.* at ¶ 49).  The Maldonados also allege that Herold has prohibited her child from playing with the Maldonados' child and referred to the Maldonados as "those people."  (*Id.* at ¶¶ 57−58).

The phrases "those people" and "these people" are not enough to sustain a claim under § 1981.  *See Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 420 (5th Cir. 2009) ("[C]omments that are vague . . . are insufficient to establish discrimination."); *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269–70 (Del. 2010) (a loan officer's use of phrase "you people" in reference to mortgagors did not alone show discriminatory animus).  The allegations as to Hill and Herold do not plausibly plead discriminatory intent.

### 4.      Section 1985(3) Claim

To plead a claim under § 1985(3), a plaintiff must plead sufficient facts to plausibly show: (1) the existence of a conspiracy; (2) for the purpose of depriving a person or class of the equal protection of the laws, and (3) acts in furtherance of the conspiracy; (4) injury to the person or property or deprivation of a right of a United States citizen.  *McCoy v. Homestead Studio Suites Hotels*, 177 F. App'x 442, 446 (5th Cir. 2006) (citing *Deubert v. Gulf Fed. Sav. Bank,* 820 F.2d 754, 757 (5th Cir. 1987)); 42 U.S.C. § 1985(3).  Because the Maldonados sufficiently alleged that FirstService, Brown, Royal Brook, McKenry, and Palamidy conspired to violated § 1981 and

14

§ 1982, (Docket Entry No. 28 at ¶¶ 10, 44, 48, 59, 72, 81, 94, 130), the Maldonados sufficiently allege a claim under § 1985(3) against FirstService, Brown, Royal Brook, McKenry, and Palamidy. *See Cho v. Itco, Inc.*, 782 F. Supp. 1186, 1187 (E.D. Tex. 1992).

> **B.    The Intentional Infliction of Emotional Distress Claims Against FirstService, Brown, Royal Brook, McKenry, Hill, Palamidy, and Herold.**

To allege a claim for intentional infliction of emotional distress, the plaintiff must allege facts showing that: "1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). It is for the court to determine as a matter of law whether a defendant's conduct was "extreme and outrageous." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 616 (Tex. 1999).

A tortious act alone is not "extreme and outrageous." *See Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999). To be "extreme and outrageous," a defendant's acts must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (quoting *GTE*, 998 S.W.2d at 611). Liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. *GTE*, 998 S.W.2d at 612.

The Maldonados have not sufficiently alleged facts showing that the defendants' conduct was "extreme and outrageous." The allegations as to Hill and Palamidy do not rise above "indignities, threats, annoyances, [or] petty oppressions." *GTE*, 998 S.W.2d at 612; *see also Von Beck-Lutes v. Arning*, 484 F. Supp. 2d 585, 588 (W.D. Tex. 2007) (assaulting a plaintiff at his wife's funeral did "not meet the outrageousness standard of Texas law"); *see also Swafford v. Bank*

*of Am. Corp.*, 401 F. Supp. 2d 761 (S.D. Tex. 2005) (quoting *Hoffmann-La-Roche*,  144 S.W.3d

at 448–49) (vulgar joke-telling, verbal abuse, unfair evaluations, and unfair and discriminatory job

termination, did not, as a matter of law, rise to the level of extreme or outrageous conduct); *Johnson*

*v. Merrell Dow Pharms., Inc.*, 965 F.2d 31, 34 (5th Cir. 1992) (dismissing a claim despite

allegations of a defendant's extreme hostility, constant criticism, and threats of job termination).

The Maldonados did not sufficiently plead a claim for intentional infliction of emotional distress.

### C.    The Tortious Interference Claim Against FirstService, Brown, Royal Brook, McKenry, Hill, Palamidy, and Herold.

To allege a claim for tortious interference with a contract, the plaintiff must allege: "(1) the

existence of a valid contract subject to interference; (2) that the defendant willfully and

intentionally interfered with the contract; (3) that the interference proximately caused the

plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss."  *Cmty. Health Sys.*

*Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).  Tortious interference claims

may proceed only against a stranger to the contract at issue.  *Id.* at 690.  Corporate agents are not

strangers to a contract between the corporation and the plaintiff.  *Id.*

Royal Brook, First Service, Brown, and McKenry are either signatories to the community

plan or agents of a signatory by implied or express authority.  *See Gaines v. Kelly*, 235 S.W.3d

179, 182 (Tex. 2007) (citing *Hester Int'l Corp. v. Fed. Republic of Nig.*, 879 F.2d 170, 181 (5th

Cir. 1989)) ("An agent's authority to act on behalf of a principal depends on some communication

by the principal either to the agent (actual or express authority) or to the third party (apparent or

implied authority).").  The Maldonados cannot maintain a tortious interference claim against them.

The Maldonados sufficiently allege that Hill and Palamidy tortiously interfered with their

contract with Royal Brook.  The subdivision deed restrictions are a valid contract.  *See Ski Masters*

*of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 668 (Tex. App.—San Antonio 2008, no pet.) ("A restrictive covenant is a contractual agreement . . . .). The Maldonados allege that Hill and Palamidy intentionally interfered with the contract by "influenc[ing], and increas[ing] pressure on, the HOA board members and employees of FirstService." (Docket Entry No. 28 at ¶ 46). The Maldonados allege that the interference deprived them of the "peaceful enjoyment and use of their property," including their ability to park their van and trailer in the subdivision. (*Id.*).

Hill and Palamidy argue that they are parties to the Maldonados' contract with Royal Brook. (Docket Entry Nos. 35-36 at ¶ 16). While Hill and Palamidy are residents of the Royal Brook subdivision, Hill and Palamidy have not submitted, and the court has not located, authority that neighbors, by agreeing to abide by the same deed restrictions, are parties to the same contract. Hill and Palamidy are not parties to the contract between the Maldonados and Royal Brook.

### D.     The Stalking Claims Against Hill and Palamidy

Under Texas law, a plaintiff sufficiently pleads stalking against a defendant by alleging:

(a)(1) on more than one occasion the defendant engaged in harassing behavior;

(2) as a result of the harassing behavior, the claimant reasonably feared for the claimant's safety or the safety of a member of the claimant's family; and

(3) the defendant violated a restraining order prohibiting harassing behavior or:

> (A) the defendant, while engaged in harassing behavior, by acts or words threatened to inflict bodily injury on the claimant or to commit an offense against the claimant, a member of the claimant's family, or the claimant's property;

> (B) the defendant had the apparent ability to carry out the threat;

> (C) the defendant's apparent ability to carry out the threat caused the claimant to reasonably fear for the claimant's safety or the safety of a family member;

(D) the claimant at least once clearly demanded that the defendant stop the defendant's harassing behavior;

(E) after the demand to stop by the claimant, the defendant continued the harassing behavior; and

(F) the harassing behavior has been reported to the police as a stalking offense.

Tex. Civ. Prac. & Rem. Code Ann. § 85.003; *see also Doe v. Siddiqui*, No. 3:17-CV-01869, 2018 WL 3956292, at *3 (N.D. Tex. Aug. 17, 2018).

The Maldonados have sufficiently alleged behavior that allows their stalking claim to proceed.   The Maldonados allege that Hill and Palamidy sent the Maldonados several "discriminatory and harassing messages."  (Docket No. 28 at ¶ 37).  They allege that on one occasion, Palamidy "cut in front of the Maldonados' vehicle, and began obstructing [Ms. Maldonado's] access to the neighborhood mailboxes . . . with the obvious intention of harassing and taunt[ing] her."  (*Id.* at ¶ 39).  The Maldonados allege that, on a separate occasion, Palamidy "steered his vehicle towards Mr. Maldonado as if to strike him, but then turned away at split last second, almost hitting him with his car."  (*Id.* at ¶ 53).  These allegations are sufficient to plead "harassing behavior."  Tex. Civ. Prac. & Rem. Code Ann. § 85.001(4) ("'Harassing behavior' means conduct by the defendant directed specifically toward the claimant, including following the claimant, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the claimant.").

The Maldonados have also sufficiently alleged that they fear for their safety to meet the § 85.003 (a)(3)(A)–(F) elements of their claim against Palamidy.  The Maldonados allege that:

- Hill and Palamidy made "violent threats against their person or property," (*id.* at ¶ 145);

18

- Palamidy had the reasonable ability to carry out a threat against Maldonado when he "steered his vehicle towards" Maldonado, (*id.* at ¶ 53);

- "Mr. Maldonado feared for his physical safety and life" when Palamidy swerved his car toward him, (*id.*); and

- the Maldonados have asked Palamidy and Hill to stop engaging in such conduct "several times" to no avail, (*id.* at ¶ 138).

The Maldonados have alleged facts sufficient to survive Palamidy's motion to dismiss. The Maldonados have not sufficiently alleged a claim for stalking against Hill.

### E.    The Maldonados' Motion to Dismiss the Defendants' Counterclaim

Royal Brook filed a counterclaim against the Maldonados, asserting breach-of-contract and breach-of-restrictive-covenant claims and a claim under Texas Property Code § 202.004(c). These claims rely on alleged violations of two Royal Brook deed restrictions.  (Docket Entry No. 41).  Royal Brook alleges that the Maldonados violated § 10.02 and § 10.20 by parking their van and trailer in the Royal Brooks subdivision, disrupting the quiet enjoyment of the community members.  (*Id.* at ¶¶ 30–31).

### 1.    Breach of Section 10.02

Section 10.02 provides:

> 10.02 **Prohibition of Offensive or Commercial Use**. . . . No activity which may be offensive or becomes an annoyance or nuisance to the neighborhood or which shall in any way unreasonably interfere with the quiet enjoyment of each Owner of such Owner's Lot or which shall degrade property values or distract from the aesthetic beauty of the Property shall be conducted thereon.

(Docket Entry No. 41 at ¶ 13).

19

Section 10.02 prohibits activities that (1) are offensive, (2) are an annoyance or nuisance to the neighborhood, or (3) unreasonably interfere with a neighbor's quiet enjoyment of his or her property.  Royal Brook alleges that the Maldonados' van and trailer are a nuisance to the neighborhood and unreasonably interfere with their neighbors' quiet enjoyment of their property because the van and trailer have prevented the neighbors' garbage from being picked up.  (Docket Entry No. 41 at ¶ 14).  These do not specify whether the trailer or the van prevented the garbage collection trucks from collecting the Maldonados' neighbors' garbage cans.

Section 10.02 does not define "nuisance."  The deed restrictions incorporate the common-law definition.  *See Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702, 709 (Tex. 2021) (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)) (contract terms are defined by "their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense").  A "nuisance" is "the interference with the use and enjoyment of property."  *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 594 (Tex. 2016).  The interference must be "substantial" and cause "discomfort or annoyance" that is "unreasonable."  *Id.*

Royal Brook's counterclaim alleges that the van or trailer blocked a resident's garbage from being picked up only once.  (Docket Entry No. 41 at ¶ 14).  Royal Brook does not allege facts suggesting that the Maldonados' van or trailer caused a nuisance.  An alleged single disruption of trash service is not a substantial interference or the cause of unreasonable discomfort or annoyance and does not allege a nuisance.  *See O'Reilly v. State*, 501 S.W.3d 722, 726 (Tex. App.—Dallas 2016, no pet.) (finding sufficient evidence of nuisance only after the defendant "allowed trash and debris to accumulate" and cover nearly half of his property).  This counterclaim is dismissed.

20

2. **Breach of Section 10.20**

Royal Brook also alleges that the Maldonados violated §10.20 of the deed restrictions:

10.20 **Storage of Automobiles, Boats, Trailers, Other Vehicles and Equipment.**
Except as otherwise specifically provided in this Declaration, no Owner, lessee,
tenant or occupant of a Lot, including all persons who reside with such Owner,
lessee or occupant on the Lot, shall park, keep or store any vehicle on any Lot which
is visible from any street in the Subdivision or any neighboring Lot other than a
passenger vehicle or light truck and then only if parked on the driveway for a period
not exceeding forty-eight (48) consecutive hours. For purposes of these
Restrictions, the term "passenger vehicle" is limited to any vehicle which displays
a passenger vehicle license plate issued by the State of Texas or which, if displaying
a license plate issued by another state, would be eligible to obtain a passenger
vehicle license plate from the State of Texas, and the term "light truck" is limited
to a one (1) ton capacity pickup truck, sports utility vehicle, or van which has not
been adapted or modified for commercial use. Such commercial modifications may
include, but is not limited to, business signage on the vehicle. No passenger vehicle
or light truck owned or used by the residents of a Lot shall be permitted to be parked
overnight on any street in the Subdivision. No guest of an Owner, lessee or other
occupant of a Lot shall be entitled to park on any street in the Subdivision overnight
or on the driveway of a Lot for a period longer than forty-eight (48) consecutive
hours.

(Docket Entry No. 41 at ¶ 13).

Section 10.20 states that a lot owner may not park a vehicle in the subdivision unless (1) it

is either a "light truck" or a "passenger vehicle" and (2) it is parked on the driveway for a period

not exceeding 48 consecutive hours. If a vehicle qualifies as either a light truck or passenger

vehicle, §10.20 allows a lot owner to park the vehicle in the subdivision, subject to the 48-hour

limit. A lot owner may not park vehicles on the street overnight, regardless of the vehicle's

classification. Royal Brook alleges that the van is neither a "light truck" nor a "passenger vehicle."

(*Id.* at ¶ 23). They also allege that the Maldonados parked their van and trailer in the street

overnight.

21

a.      **Light Truck**

The deed restrictions define a "light truck" as a "one (1) ton capacity pickup truck, sports utility vehicle, or van which has not been adapted or modified for commercial use." (*Id.* at ¶ 13). Business signage on a vehicle is an example of a commercial adaptation or modification.

Royal Brook does not allege that the Maldonados' van is over a one-ton capacity.  Royal Brook alleges that the Maldonados are using the van to transport work equipment and that the van has a roof rack. (*Id.* at ¶ 23).  Royal Brook does not allege that the Maldonados modified or adapted their van to transport work equipment.  Nor does Royal Brook allege facts showing that the roof rack is a commercial modification or adaptation, as opposed to a stock feature.  Because Royal Brook did not allege that the Maldonados' van falls outside the definition of light truck, Royal Brook has not alleged that the Maldonados violated § 10.20 by parking their van in the subdivision.

Royal Brook alleges that the Maldonados' trailer has business signage.  (*Id.*).  This qualifies as a commercial modification under § 10.20.  Royal Brook has adequately alleged that the Maldonados' trailer does not qualify as a light truck.

b.      **Passenger Vehicle**

The deed restrictions define a "passenger vehicle" as any vehicle that "displays a passenger vehicle license plate issued by the State of Texas or which, if displaying a license plate issued by another state, would be eligible to obtain a passenger vehicle license plate from the State of Texas." Royal Brook alleges that the van is not a passenger vehicle.  (*Id.*).  Royal Brook does not allege what type of license plate is displayed on the Maldonados' van.  Royal Brook alleges that the van is registered as a commercial van with the State of Texas, but Royal Brook did not provide any information as to the van registration.  The Maldonados did.  (Docket Entry No. 28 at ¶ 111).  The

Maldonados' pleading alleges that the van is registered with a passenger-vehicle license plate.[2] Royal Brook did not adequately allege that the Maldonados' van falls outside the definition of a passenger vehicle.

Despite the van registration, Royal Brook argues that the van should be classified as a prohibited commercial vehicle because Maldonado uses the van to transport his work equipment and to tow his commercial trailer. (*Id.* at ¶ 23). Though Royal Brook repeatedly characterizes the Maldonados' van as a "commercial van" or "commercial vehicle," (*Id.* at ¶¶ 14, 17, 23, 31, 43, 46, 55), the phrases do not appear in §10.20. Section 10.20 does not prohibit commercial vehicles; it prohibits vehicles that either have "been adapted or modified for commercial use" or display a non-passenger-vehicle license plate. (*Id.* at ¶ 13). Royal Brook does not allege that the Maldonados' van has commercial adaptations or modifications. Nor does Royal Brook allege that the Maldonados' van lacks a passenger vehicle license plate.

Royal Brook has not sufficiently alleged that the Maldonados' work trailer is not a passenger vehicle and violates § 10.20.

### c.      Overnight Parking

Royal Brook alleges that the Maldonados parked their van and trailer on the street overnight. (Docket Entry No. 41 at ¶¶ 14, 16). Section 10.20 prohibits residents from parking a vehicle "overnight on any street in the Subdivision," regardless of whether the vehicle is a light

---

[2] Royal Brook references the Maldonados' van registration in the counterclaim. It is appropriate for the court to consider it. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1357 (3d ed. 2020) ("[M]atters incorporated  by reference or integral to the claim [and] items appearing in the record of the case . . . may be considered by the district judge without converting the [Rule 12(b)(6)] motion into one for summary judgment"); *see also Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

23

truck or a passenger vehicle.  (*Id.* at ¶ 13).  Royal Brook sufficiently alleged that the Maldonados violated § 10.20 by parking their van and trailer on the street overnight.

## IV.    Conclusion

- The motion to dismiss filed by FirstService, Royal Brook, Brown, and McKenry, (Docket Entry No. 33), is denied as to the §§ 1981, 1982, and 1985(3) claims, and the motion to dismiss is granted as to the intentional infliction of emotional distress claim.

- Palamidy's motion to dismiss, (Docket Entry No. 36), is denied as to the §§ 1981, 1982, and 1985(3) claims, the tortious interference claim, and the stalking claim, and is granted as to the intentional infliction of emotional distress claim.

- Hill's motion to dismiss, (Docket Entry No. 35), is granted.

- Herold's motion to dismiss, (Docket Entry No. 31), is granted.

- The Maldonados' motion to dismiss the counterclaim is denied as to alleged violations of §10.02.  The motion is granted as to alleged violations of §10.20: Royal Brook did not sufficiently plead a claim based on the Maldonados allegedly parking their van in their driveway; but Royal Brook did sufficiently plead a violation of §10.20 based on the Maldonados parking their trailer in the subdivision and parking their van on the street overnight.

SIGNED on June 18, 2021, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

24