United States District Court
Southern District of Texas
**ENTERED**
November 08, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE A. MALDONADO AND MARIA R. MALDONADO, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-20-1484 |
| FIRSTSERVICE RESIDENTIAL, INC.; NATASHA BROWN; ROYAL BROOK COMMUNITY ASSOCIATION, INC.; FRIENDSWOOD DEVELOPMENT COMPANY, LLC; JOHN H. PALAMIDY, JR.; CYNTHIA A. HILL; KORIE HEROLD; JENNIFER MCKENRY, | § § § § § § § § § § | |
| Defendants. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE MALDONADOS' CLAIMS AGAINST FIRSTSERVICE RESIDENTIAL, INC., NATASHA BROWN, THE FRIENDSWOOD DEVELOPMENT COMPANY, LLC, ROYAL BROOK COMMUNITY ASSOCIATION, INC., AND JENNIFER MCKENRY AND ROYAL BROOK COMMUNITY ASSOCIATION'S COUNTERCLAIM AGAINST THE MALDONADOS**

With the parties' consent, the court simultaneously held a jury trial on the claims of the plaintiffs, Jose and Maria Maldonado, against John Palamidy and Cynthia A. Hill, and the claims of Mr. Palamidy and Ms. Hill against Mr. Maldonado, and a bench trial on the claims of the plaintiffs, Jose and Maria Maldonado, against the defendants FirstService Residential, Inc. ("FirstService"), Natasha Brown, the Friendswood Development Company, LLC, Royal Brook Community Association, Inc. (the "Association"), and Jennifer McKenry (collectively, the "Royal Brook Defendants"). Based on the trial evidence, the record, the jury verdict, and the applicable law, the court has entered a take nothing judgment on the claims between the Maldonados and Mr. Palamidy and Ms. Hill. Based on the trial evidence, the record, the court's prior rulings, and the

applicable law, the court enters the following findings of fact and conclusions of law.

## FACTUAL FINDINGS

1. In November 2019, the Maldonados moved into the home they had purchased in October 2019, located at 3211 Skylark Valley Trace in Royal Brook at Kingwood. Royal Brook is a master planned community governed by Deed Restrictions. Homeowners residing in the community must comply with the Deed Restrictions.

2. Friendswood Development Company developed Royal Brook at Kingwood and is the declarant for the Association. Under the Deed Restrictions, the Association is "delegated and assigned the powers of administering and enforcing the provisions of this Declaration[.]"

3. The Association periodically conducts drive-through checks for Deed Restriction violations during the day, but it primarily relies on homeowners residing in the community to report violations. On receipt of a complaint, the Association investigates to determine if there is a reasonable basis to believe that a violation exists. If there is a basis for the reported violation, the Association sends a notice in accordance with the Deed Restrictions and the Texas Property Code.

4. A homeowner receiving a violation notice has the right to request a hearing with the Association's board of directors, who are agents of the Association. The board of directors consists of three volunteers. As a Texas nonprofit corporation, the Association acts by majority vote. Jennifer McKenry, a homeowner in Royal Brook, is a member of the board of directors.

5. FirstService conducts the day-to-day business of the Association, including investigating reported violations of the Deed Restrictions. FirstService and its employees are agents of the Association. FirstService is the point of contact for homeowners for violations of the Deed Restrictions and other matters relating to the Royal Brook community. FirstService

employs community managers to serve as the contact for homeowners. Natasha Brown is a Royal Brook community manager.

6. The Deed Restrictions limit parking and storing vehicles in the Royal Brook community. Homeowners are not permitted to park or store vehicles overnight on the street, or permitted to park or store trailers in the subdivision. Section 10.20 of the Deed Restrictions states as follows:

> ***Except as otherwise specifically provided in this Declaration,*** no Owner, lessee, tenant or occupant of a Lot, including all persons who reside with such Owner, lessee or occupant on the Lot, shall park, keep or store any vehicle on any Lot which is visible from any street in the Subdivision or any neighboring Lot other than a **passenger vehicle** *or* light truck and then only if parked on the driveway for a period not exceeding forty-eight (48) consecutive hours. For purposes of these Restrictions, the term "passenger vehicle" is limited to any vehicle which displays a passenger vehicle license plate issued by the State of Texas or which, if displaying a license plate issued by another state, would be eligible to obtain a passenger vehicle license plate from the State of Texas, and the term "light truck" is limited to a one (1) ton capacity pickup truck, sports utility vehicle, or van which has not been adapted or modified for commercial use. Such commercial modifications may include, but is not limited to, business signage on the vehicle. No passenger vehicle or light truck owned or used by the residents of a Lot shall be permitted to be parked overnight on any street in the Subdivision.

7. The Deed Restrictions cover the property within the Royal Brook community plat. The Maldonados' home is within Section 18 of the Royal Brook community. The plat for Section 18 includes the streets as well as the lots contained in that Section. The plat shows the streets and designates them for public use, subject to the Deed Restrictions.

8. When the Maldonados moved to the Royal Brook community in November 2019, their home still needed interior improvements. That work continued until May or June 2020.

9. John Palamidy and Cynthia Hill own a home on the same cul-de-sac as the Maldonados. The Maldonados' relationship with these neighbors deteriorated soon after the Maldonados moved in. Mr. Maldonado wrongly interpreted Mr. Palamidy's first conversation

3

with him as disparaging his family's Hispanic ethnicity and Puerto Rican national origin. As a result, Mr. Maldonado viewed Mr. Palamidy with suspicion and dislike. Ms. Hill had only one conversation with Mr. Maldonado and testified that she found him arrogant and unpleasant and that she viewed him with suspicion and dislike.

10. In November 2019, Ms. Hill reported to the Association that a trailer was parked in front of the Maldonados' house and in their driveway. FirstService investigated and on November 25, 2019, sent a notice marked "Friendly Reminder" to the Maldonados, asking them to remove the trailer. The notice referred to Section 10.20 of the Deed Restrictions.

11. Mr. Maldonado responded to the FirstService notice by an email dated December 16, 2019, explaining that the Maldonados were doing interior work on their home, and that Mr. Maldonado did not think Section 10.20 of the Deed Restrictions applied to the van or to the trailer because he needed it for the work on the home. The email complained that Mr. Maldonado's neighbors had made disparaging comments about the Maldonados' national origin and ethnicity.

12. In early January 2020, Mr. Maldonado further responded to Ms. Hill's complaint by posting to Facebook a video of Mr. Palamidy taking sod from a house under construction and accusing him of theft. Mr. Maldonado's accusation was baseless. When Mr. Palamidy discovered the post, he insulted Mr. Maldonado, including by telling him to "get rid of your taco truck." Mr. Palamidy's social media message to Mr. Maldonado was inappropriate and offensive.

13. That same day, Mr. Maldonado filed the first of at least nine criminal complaints against Mr. Palamidy, alleging that he had dented one of the Maldonados' vehicles. Mr. Maldonado reported it as a hate crime because Mr. Palamidy "ha[d] made fun of his children's Latino names in the past and ha[d] texted him to move his 'taco truck.'"

14. Three days later, Mr. Maldonado again called the police, reporting that Mr. Palamidy was harassing him by taking photos of him working in his garage in order to file a complaint with the Association. Mr. Maldonado told the police officers that Mr. Palamidy was filing false reports of Deed Restriction violations with the Association and threatening to contact the police about reported parking violations. Mr. Maldonado had no basis to make either of the first two police reports. The police tried to engage in a reconciliation process, but Mr. Maldonado declined to participate.

15. When Mr. Maldonado continued to park his van and trailer in front of his house, other neighbors in the cul-de-sac complained to the Association. The neighbors also posted information on the Facebook group for the Royal Brook community, questioning whether the Deed Restrictions allowed the van and trailer in the community. Mr. Maldonado wrongly interpreted these messages as evidence of a concerted attempt to discriminatorily enforce the Deed Restrictions on parking and storing vehicles against his family because of their ethnicity and national origin.

16. Ms. Hill and Mr. Palamidy sent numerous written complaints to FirstService against the Maldonados for parking the van and trailer in front of their house. At least one of those complaints referred to the Maldonados' "culture." That remark was inappropriate and offensive. The credible evidence is that the Association disregarded it and was not influenced by it.

17. Mr. Maldonado retained a lawyer, who requested clarification from FirstService about the notices it had sent and about the Deed Restrictions on parking and storing vehicles. The lawyer's letter stated that Mr. Maldonado needed the vehicles for the interior work he was doing on the home. The Association responded that if the van and trailer were being used for improvements to the home, the Maldonados needed to submit a request for the vehicles to be there

until the construction was completed. The Maldonados did not do so. They continued to park the van and the trailer in front of or on their property and they continued to park on the street overnight.

18. FirstService sent a written notice to Mr. Maldonado, dated February 10, 2020, by certified mail, referencing a "Violation ID" number "877680" described as "Vehicles – Remove Trailer." This notice requested that the Maldonados remove the trailer from their property.

19. On March 25, 2020, at the Maldonados' request, the Association held a telephonic hearing with Mr. Maldonado and his lawyer and the Association board members. Jennifer McKenry, Natasha Brown, and the Association's lawyer, Catherine Zarate, were present. Mr. Maldonado raised concerns about being the target of discriminatory enforcement of the Deed Restrictions on parking and storing vehicles. He gave examples of other neighbors who were parking on the street not being sent notice of violations. Following the hearing, the Association issued its decision in a letter signed by Catherine Zarate dated March 30, 2020. The letter stated that "[t]he Ford Transit Van is identified as a commercial van by the State of Texas (see attached registration document)." The letter stated:

> The van is not passenger in its nature nor is it being used as a passenger vehicle. Regarding the commercial trailer, the Restrictions are very clear to only permit passenger vehicles and/or light trucks to be ***parked in the community***. The Restrictions do not permit a trailer to be stored in the community. Additionally, the trailer is commercial in nature with signage advertising Mr. Maldonado's business which is again, a violation of the Restrictions.

The March 30, 2020 letter also stated that: "[C]ommercial vehicles and trailers may not be parked/stored in the community either on the street or in the driveway when work is not being performed on the property." The letter concluded that Mr. Maldonado had until April 3, 2020 to "come into compliance with" the Deed Restrictions.

20. The van was not a commercial vehicle, as defined in the Deed Restrictions. It was, however, reasonable for the Association to believe that the van was a commercial vehicle. The

Association did not act unreasonably or in bad faith in applying the Deed Restrictions to the Maldonados.

21. On April 22, 2020, Mr. Maldonado reported to the police that Mr. Palamidy was harassing him by filing false claims with the police and the Association. There was no basis for Mr. Maldonado to call the police with this complaint. Four days later, Mr. Maldonado again called the police. This time, he reported that while he was in the street blowing leaves, Mr. Palamidy had swerved to hit him with his truck. Mr. Maldonado alleged attempted murder. A recording of the incident shows that there was no basis for the allegation or for the call to the police.

22. The day after Mr. Maldonado reported to the police that Mr. Palamidy had attempted to run him over with his vehicle, the Maldonados filed this lawsuit.

23. In June 2019, at an Association meeting, the Association took the position that because the streets are owned and maintained by The City of Houston, the Association does not have the authority to enforce traffic violations. The Association asked residents to use driveways for parking to allow traffic in the community to move freely.

24. The Association enforced the Deed Restrictions on parking and storing vehicles not only against the Maldonados, but throughout the community when it received notices of a violation and its investigation showed a basis to believe that a violation had occurred. The Association investigates only when it receives reports or otherwise learns of Deed Restriction violations. FirstService and the Association have a number of open Deed Restriction enforcement violations in Royal Brook, including for parking violations. The Association does not collect data on ethnicity, race, or national origin. The evidence does not show that the Association discriminated against the Maldonado's by enforcing the Deed Restrictions on parking and storing vehicles on the basis of national original or ethnicity.

25.     The Association's actions were not motivated by the Maldonados' ethnicity, race, or national origin.  The record does not show discriminatory enforcement of the Deed Restrictions against the Maldonados.

26.     Neither the Association, FirstService, Natasha Brown, Jennifer McKenry, nor the Friendswood Development Company discriminated against Maldonados in enforcing the Deed Restrictions.  These Royal Brook Defendants did not discriminate against the Maldonados because of their national origin or ethnicity, or impair or interfere with their right to enjoy the full and equal benefits of home ownership under the Deed Restrictions in the same way as non-Puerto Rican or Hispanic homeowners. Natasha Brown credibly testified as to the steps the Association took to investigate and pursue reports of Deed Restriction parking and storage violations throughout Royal Brook.

27.     The Association, First Service, Natasha Brown, Jennifer McKenry, and the Friendswood Development Company had a reasonable and good-faith belief that the Maldonados had violated the Deed Restrictions on parking and storing vehicles when the enforcement actions were taken.  The Royal Brook Defendants did not act arbitrarily, capriciously, or discriminatorily in enforcing the Deed Restrictions as to the Maldonados.

28.     Jose Maldonado, John Palamidy, and Cynthia Hill all made unwise, inappropriate, remarks and did and said things that they acknowledged at trial they regret.  The jury agreed, finding no liability or damages for the Maldonados against Mr. Palamidy, no liability of damages for Mr. Palamidy against the Maldonados, and liability but no damages for Ms. Hill against Mr. Maldonado.  Their actions and comments did not show discriminatory intent by the Association or the other Royal Brook Defendants.

**CONCLUSIONS OF LAW**

**I.      Discrimination**

29.     The Royal Brook Defendants did not discriminate against the Maldonados based on ethnicity or national origin, and there is no basis for finding a violation of 42 U.S.C. §§ 1981 or 1982.  *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001); *Morris v. Off. Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

30.     The Maldonados were not prevented from purchasing, leasing, selling, holding, conveying, or using real or personal property because of ethnicity, national origin, or race, and there is no basis for finding a violation of 42 U.S.C. § 1982.  *See* 42 U.S.C. § 1982.

31.     The Maldonados' ethnicity or national origin was not a but-for cause of the deprivation of any legally protected right under §§ 1981 or 1982.  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1016, 1019 (2020).

32.     A § 1985(3) claim does not establish substantive rights, but is a means to vindicate an otherwise defined federal right. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also* 42 U.S.C. § 1985(3).  The Royal Brook Defendants did not conspire to discriminate under § 1985(3). The Maldonados failed to show that there was an agreement between the Royal Book Defendants and any other person, for the purpose of depriving the Maldonados of the equal protection of the laws, or that they were deprived of equal treatment under the law.  The Maldonados failed to show that the Royal Brook Defendants committed an act of "class-based, invidious discrimination." *United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 835 (1983).

33.     The Royal Brook Defendants had legitimate, nondiscriminatory reasons for the actions they took to enforce the Deed Restrictions in response to reports of, and investigation into, the Maldonados' violations of the provisions on parking and storing vehicles.  The Royal Brook

Defendants acted based on a reasonable, good-faith belief that the Maldonados had violated the Deed Restrictions on parking and storing vehicles.

34.  The Royal Brook Defendants did not discriminate against the Maldonados and did not conspire to discriminate against the Maldonados.

## II.  Breach of the Deed Restrictions

35.  The Maldonados breached Section 10.20 of the Deed Restrictions by parking vehicles on the street overnight and by parking the trailer in Royal Brook.

## III.  Injunctive Relief

The parties entered into an Agreed Permanent Injunction, which the court has entered. The claim for declaratory relief is moot.

SIGNED on November 8, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge